UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Richard and Patricia Martin,

Plaintiffs,                         Civ. No. 10-3594 (RHK/FLN)

v.                                          **MEMORANDUM OPINION
                                            AND ORDER**

State Farm Fire and Casualty Company,

Defendant.

Brendan R. Tupa, Udoibok, Davis & Tupa, PLLP, Minneapolis, Minnesota, for Plaintiffs.

Tony R. Krall, Bjork T. Hill, Hanson Lulic & Krall, LLC, Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

On August 21, 2008, the home of Plaintiffs Richard and Patricia Martin ("the Martins") was significantly damaged in a fire. They filed a claim with their insurer, Defendant State Farm Fire and Casualty Company ("State Farm"), which denied it. The Martins then commenced the instant action, seeking to recover the proceeds of their policy. State Farm now moves for summary judgment, based on the Martins' ostensible failure to comply with several policy provisions. For the reasons set forth below, the Court will deny the Motion.

## BACKGROUND

The relevant facts are undisputed. The Martins previously lived in a house on Beard Avenue North in Brooklyn Park, Minnesota, which was insured by State Farm. In

early 2008, they were experiencing financial difficulties, and on March 26, 2008, their

mortgagee (TCF Bank ("TCF")) foreclosed on their home.  The redemption period was

set to expire on September 26, 2008.

On August 21, 2008, the house and its contents were severely damaged in a fire.

The Martins promptly notified State Farm and submitted a claim for the losses sustained.

Because the house was no longer habitable, the Martins (and their two teenage children)

moved out.

State Farm began an investigation.  On August 22, 2008, claim representative

Stephen Crosby traveled to the Martins' damaged home and met with them and a

representative of Norcon General Contractors, Inc. ("Norcon"); the Martins had hired

Norcon to complete repairs and handle the contents portion of their claim.  In claim-file

notations following this meeting, Crosby noted that "[i]t appears that the water heater or

water softener [located in the basement] may be the" cause of the fire.  Three days later,

Crosby again traveled to the Martins' home to meet with a Norcon representative.

Following this meeting, he noted that there were "a lot of contents in th[e] home" and

that Norcon would be "provid[ing] the [Martins] with a list of unsalvagable [*sic*] items

and will not throw anything away until they discuss [it] with" the Martins.

On August 29, 2008, at State Farm's behest, "inspector" Jamie Novak conducted

an "origin and cause" analysis of the fire.  Novak tested clothing next to the hot water

heater and discovered "medium petroleum distillates," suggesting that the fire was of

incendiary origin.  He relayed this information to State Farm, and a further inspection

was scheduled for the following week with mechanical engineer Sid Bhatt.  On

September 3, 2008, Novak, Bhatt, and State Farm claim representative Charlie O'Brien

met at the Martins' home.  Bhatt determined that the hot-water heater and water softener

were functioning properly and opined that they had not caused the fire.[1]

O'Brien then spoke with Richard Martin and asked him (and his family members)

to provide recorded statements to the company; they did so.  They also signed

authorizations for the release of their financial records.  O'Brien informed the Martins at

that time that the fire appeared suspicious and that State Farm needed to complete an

investigation regarding its cause before a final decision could be made on their claim.

Meanwhile, on September 12, 2008, State Farm sent the Martins a letter at the

Beard Avenue address reserving its rights under the policy and asking them to submit a

Sworn Statement in Proof of Loss within 60 days of receipt, along with supporting

documents called Personal Property Inventory Forms ("PPIFs").  The PPIFs required the

Martins, among other things, to inventory the household contents damaged in the fire and

provide certain information about them, such as the date of purchase, purchase price, and

the like.  The Martins then contacted Norcon, which had possession of their personal

property.  According to Richard Martin, Norcon advised him that it had "put everything

on hold at the request of State Farm."  State Farm's claim notes also indicate that Richard

Martin informed it on September 29, 2008, that "he cannot submit [a Sworn Proof of

---

[1] Around this time, Richard Martin spoke with O'Brien and informed him that his daughter had
spilled a bottle of nail-polish remover on a bedspread a few days before the fire occurred.  She
had placed the bedspread in the basement and it was subsequently moved to the laundry room,
where the hot-water heater and water softener were located.  Novak obtained the same type of
nail-polish remover and determined that it contained light, not medium, petroleum distillates.

Loss] as he cannot complete PPIF's as everything [has been] put on HOLD by [State

Farm] per Norcon, his cleaning company."

According to State Farm, on October 27, 2008, it mailed the Martins a letter at a

different address, on 84th Way in Brooklyn Park.  The letter informed the Martins that

because TCF now owned their home, the "building" portion of their claim would be

handled directly with TCF.  All that remained for resolution with the Martins, therefore,

was their claim for personal-property damages.  The letter further advised that Norcon

would be paid for work it had performed through October 17, 2008, but no further

payment could be made "until we complete our investigation."  The letter questioned

whether the fire was of incendiary origin, noting that Novak had found medium

petroleum distillates on clothing in the laundry room, which did not match the nail-polish

remover supposedly spilled by the Martins' daughter.  The letter requested that the

Martins and their children submit to examinations under oath before its counsel, attorney

Tony Krall, and advised that a decision would be made within 60 days of them doing so.

Finally, the letter reminded the Martins of their obligation to submit a Sworn Statement

in Proof of Loss and PPIF forms.  State Farm agreed to extend the deadline for

submitting these documents from November 15, 2008, to November 26, 2008.[2]

On November 12, 2008, attorney Krall wrote the Martins at both Brooklyn Park

addresses, scheduling their examinations under oath for November 21, 2008.  His letter

---

[2] According to a State Farm letter dated November 10, 2008, Richard Martin spoke with O'Brien
on November 7, 2008, and requested additional copies of the PPIFs.  State Farm purportedly then
mailed 30 PPIF forms to the Martins at the 84th Way address, although there is some dispute
whether this mailing actually occurred.

requested that the Martins bring with them 17 separate categories of documents,

including tax returns, utility bills, and inventories of items allegedly damaged in the fire.

The Martins appeared as requested on November 21.  Richard Martin testified first,

explaining to Krall that all of the Martins' possessions had been taken to storage by

Norcon and that they were having trouble accessing the storage unit because Norcon was

not returning their telephone calls.  He also confirmed that he had been looking for

mortgage documents and other financial documents requested by State Farm, but he was

still in the process of doing so and had not been able to locate them all.  He further

explained that he would be moving shortly from the address on 84th Way, but he did not

yet have a new address.

Krall then turned his attention to the circumstances surrounding the fire, at which

point the questions (and Martin's responses) became contentious.  Martin accused

O'Brien of falsely claiming that he had started the fire.  He also asserted that O'Brien had

claimed to send letters that the Martins had not received and had badgered him in several

telephone calls.  He stated that he had contacted the Minnesota Attorney General's office

about State Farm's handling of his claim, which he felt evidenced "bad faith."  When

Krall pressed for further details, Martin stated, "[y]ou know, I want a lawyer now.  I'm

done.  Thank you."  He and his family then walked out of the examination and left the

premises.

Later that day, Krall wrote the Martins at both Brooklyn Park addresses and asked

them to have their attorney contact him to reschedule their examinations.  After receiving

no response, he wrote the Martins again on December 10, 2008, seeking to reschedule the

examinations.  The letter was sent by certified and regular mail to only the Beard Avenue address, which the Martins purportedly "had instructed Charlie O'Brien to use."  State Farm's claim notes indicate that the certified-mail letter was returned undelivered, but not the letter sent by regular mail.  Krall received no response.

On January 6, 2009, Krall sent another letter to the Beard Avenue address by regular and certified mail; the letter scheduled the Martins' examinations under oath for January 28, 2009.  Claim notes indicate that both letters were returned undelivered.  O'Brien also left several messages on Richard Martin's cell phone regarding the January 28 examination date, but received no response.  The Martins did not appear on January 28.  However, a January 29, 2009, claim note by O'Brien indicates that he "received a [voicemail] from [Richard Martin's] (cell phone) recorded at 5:16 am this morning stating that he was sorry he did not make [the] scheduled appt but th[e] last [letter] he got from [Krall said] to contact us when he got an attorney to reschedule."

By letter dated March 9, 2009, State Farm denied the Martins' claim because (1) it had not received the Martins' Sworn Proof of Loss and PPIFs and (2) the Martins failed to appear at their examinations on January 28.  According to State Farm, these failures violated policy provisions obligating the Martins to cooperate with the company's investigation following a loss.  The letter expressly reserved "all rights and defenses to the claim, including, but not limited to, the absence of an accidental loss."

The Martins retained counsel after receiving this letter, who contacted Krall and asked him to propose dates for the Martins' examinations under oath.  Additional correspondence between counsel followed; in one letter, the Martins' counsel informed

Krall that they "did not personally receive a proof of loss form" and believed that the

PPIFs "were to be filled out by third-party contractor Norcon." Counsel also advised

Krall that much of the prior correspondence to the Martins had not been received and

appeared to have been sent to incorrect addresses. He asked for an additional proof of

loss form, which the Martins filled out and returned to State Farm in September 2009.

State Farm rejected it for lack of "necessary information, including the completed

PPIFs," and maintained its denial of the Martins' claim. This litigation followed.

State Farm now moves for summary judgment, asserting that there is no genuine

issue that the Martins failed to cooperate in its investigation and, hence, flouted several

policy provisions, thereby precluding this lawsuit.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the

nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the

material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573

F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that

may be reasonably drawn from it, in the light most favorable to the nonmoving party.

Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v.

Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on

mere allegations or denials, but must show through the presentation of admissible

evidence that specific facts exist creating a genuine issue of material fact for trial.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch.

Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

State Farm asserts that this case must be dismissed because the Martins failed to

comply with several conditions precedent to suit.  (See Def. Mem. at 14-28.)  In

particular, it relies upon policy provisions that required them to "prepare an inventory of

damaged . . . personal property," "submit to . . . examinations under oath," and "submit

. . . within 60 days after the loss, [a] signed, sworn proof of loss," all of which the

Martins failed to do.  Because the policy provides that "[n]o action shall be brought

unless there has been compliance with the policy provisions," State Farm asserts it is

entitled to summary judgment.  The Court does not agree.

It has long been recognized in Minnesota[3] that the timely submission of proof of

loss is not a condition precedent to *suit*.  Rather, it is a condition precedent to *recovery*.

The Minnesota Supreme Court has repeatedly reaffirmed this principle.  See, e.g.,

Leamington Co. v. Nonprofits' Ins. Ass'n, 615 N.W.2d 349, 353-54 (Minn. 2000); Nathe

Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 348 (Minn. 2000); Boston Ins.

Co. v. A.H. Jacobson Co., 33 N.W.2d 602, 605 (Minn. 1948); Cash v. Concordia Fire Ins.

Co. of Milwaukee, Wis., 126 N.W. 524, 525 (Minn. 1910); Mason v. St. Paul Fire &

Marine Ins. Co., 85 N.W. 13, 14 (Minn. 1901).  Indeed, as long ago as 1901, that court

recognized "it is not important that the proofs be not in fact served within the time

stated."  Mason, 85 N.W. at 14.  Minnesota courts have reached the same conclusion with

---

[3] Both parties agree that Minnesota law applies to the instant action.

regard to an examination under oath:  one is not required before a plaintiff sues but rather

is a "condition to *recovery* under the policy."  McCullough v. Travelers Cos., 424

N.W.2d 542, 544 (Minn. 1988) (emphasis added); accord Greene v. W. Bend Mut. Ins.

Co., No. A10-1031, 2011 WL 292151, at *2-3 (Minn. Ct. App. Feb. 1, 2011).

The language in the Minnesota Standard Fire Insurance Policy (the "Standard

Policy"), Minn. Stat. § 65A.01, confirms this principle.  The Standard Policy, which

contains "required terms and conditions for [Minnesota] policies of fire insurance," Nathe

Bros., 615 N.W.2d at 345, provides that "[n]o suit or action on this policy . . . shall be

*sustainable* in any court of law or equity unless the requirements of this policy have been

complied with."  Minn. Stat. § 65A.01, subd. 3 (emphasis added).  "Sustainable" is the

key word.  It means that failure to comply with a policy's cooperation clause does not

prevent an action from being *initiated* against the insurer, but only prevents the action

from being "sustained," that is, "allow[ed] or admit[ted] as valid."  Webster's Third New

International Dictionary 2304 (1986 ed.) (defining "sustain").  Put simply, such a failure

prevents the insured from *prevailing* until he has complied, but it does not prevent him

from suing in the first place.  See McCullough, 424 N.W.2d at 544 ("The [Standard]

[P]olicy merely states that no suit shall be 'sustainable' unless all the policy requirements

have been complied with.  Under this policy, an oral examination under oath is not a

condition precedent to suit.  Rather, [it] is a condition to recovery under the policy.");

Boston Ins., 33 N.W.2d at 604-05 ("Delay in furnishing proof of loss . . . merely

suspends and postpones the insured's right of action until he shall render it.").

The foregoing undermines State Farm's argument that the Martins "are barred from bringing suit in this matter." (Def. Mem. at 15.) As noted in Greene, insurance companies have repeatedly argued that the "sustainable" clause in the Standard Policy "makes compliance with policy requirements, such as submitting to an under-oath examination or timely filing a proof-of-loss statement, a condition precedent to bringing suit." 2011 WL 292151, at *3. Yet, "this interpretation . . . has been squarely rejected by the Minnesota Supreme Court." Id.[4]

State Farm's arguments to the contrary are unpersuasive. It contends that the case law discussed above does not control, based on a "back door" left open for policies containing "express language making the failure to timely submit the proof of loss fatal to the rights of the insured." Nathe Bros., 615 N.W.2d at 347. State Farm argues that there exists such "express language" in the policy here: the clause providing that "[n]o action *shall be brought* unless there has been compliance with" all of the policy's provisions. (Def. Mem. at 23-24 (emphasis added).)

---

[4] State Farm asserts that in addition to a sworn proof of loss, the Martins failed to provide financial documents such as tax returns and credit card statements. (Def. Mem. at 19-21.) It contends that this failure "made it impossible for [it] to obtain an accurate portrait of their financial condition at the time of the loss." (Id. at 21.) The Court finds this assertion disingenuous, at best. State Farm was well aware that TCF had foreclosed on the Martins' home five months before the fire and that they had not redeemed the property in the interim. It also knew that they were struggling to pay bills after the fire and repeatedly asked State Farm for advances to cover living expenses. Moreover, the Martins executed an authorization for the release of their financial records shortly after the fire, belying the suggestion that they were intentionally withholding financial information from State Farm.

Yet, this same argument was rejected by the Minnesota Court of Appeals earlier

this year in Greene.[5]  The policy there, like State Farm's policy here, provided that no

action could be *brought* unless all policy requirements were met by the insured.  Greene

held that this provision could not be enforced because it was narrower than the coverage

provided under the Standard Policy.  2011 WL 292151, at *3 (noting that such "language

is clearly an attempt to limit coverage to less than the statutory minimum," and therefore

the Standard Policy's language "supersedes [the insurer's] policy language").  As this

Court has recognized, insurance policy "provisions which conflict with statutory law

[can]not be enforced."  PHL Variable Ins. Co. v. U.S. Bank Nat'l Ass'n, Civ. No. 10-

1197, 2010 WL 3926310, at *6 (D. Minn. Oct. 4, 2010) (Kyle, J.) (citations omitted);

accord, e.g., Hertz Corp. v. State Farm Mut. Ins. Co., 573 N.W.2d 686, 690 (Minn. 1998)

("[A]n insurer's liability is governed by the contract between the parties *only as long as*

*coverage required by law is not omitted and policy provisions do not contravene*

*applicable statutes*.") (emphasis in original) (citation omitted).[6]

State Farm also contends that regardless of the language in the Standard Policy,

another Minnesota statute, Section 65A.296, bars the Martins' claim.  (See Def. Mem. at

---

[5] The Minnesota Supreme Court recently denied review in Greene.

[6] State Farm's argument appears to be based on a misapprehension of the "back door" left open by the Minnesota Supreme Court in Nathe Bros.  In suggesting that an insurer may include "specific policy language" barring a claim where the insured fails "to timely submit a sworn proof of loss," Nathe Bros. clearly was discussing the *Standard Policy*.  615 N.W.2d at 348.  In other words, the Minnesota Supreme Court noted that *the legislature* could amend the Standard Policy to add such language and doom an insured's claim.  See id.; see also McCullough, 424 N.W.2d at 544 & n.1.  But nothing in Nathe Bros. indicates that *an insurer* may narrow the coverage afforded by the Standard Policy by incorporating a provision precluding suit when an insured fails to comply with a policy's cooperation clause.

8-14.)  In pertinent part, that statute provides that an insured must submit proof of loss

within 60 days if requested by the insurer; failure to do so "is a bar to recovery . . . unless

the insured demonstrates . . . good cause for failing to comply."  Minn. Stat. § 65A.296,

subd. 2(1).  But this statute does not alter the Court's analysis.  Like the Standard Policy,

Section 65A.296 does not provide that failure to timely submit proof of loss bars an

insured's *suit*.  Rather, it expressly provides that such a failure is "a bar to *recovery*."

Thus, Section 65A.296, like the Standard Policy, does not mandate dismissal.[7]

State Farm also argues that the Martins' claim is barred because it is "undisputed"

that they "repeated[ly] fail[ed] to submit to an Examination Under Oath."  (Def. Mem. at

21.)  But that contention is far from "undisputed."  The record indicates that the Martins

provided recorded statements to State Farm (albeit not under oath) shortly after the fire.

They appeared for examinations as requested, but terminated them after Richard Martin

invoked his right to counsel.  Although they failed to appear at a later time *unilaterally*

set by State Farm's counsel, there is some dispute whether they received notice of that

examination and, if so, whether that notice was effective, since State Farm had previously

told them to contact its counsel only once they had secured an attorney.  And after they

---

[7] Even if this statute controlled, the Court would determine that there exists a genuine issue whether the Martins have shown "good cause" for failing to timely submit proof of loss.  The record suggests that they were unable to access their personal belongings, which had been removed from their home and placed in storage by Norcon, and repeatedly communicated this fact to State Farm.  Evidence also indicates that they believed Norcon had provided information regarding their property to the insurer and that they made at least a limited effort to gather documents as requested by State Farm.  And, there is some question whether they received all of State Farm's requests, which were mailed to several different addresses not always matching those at which they resided.  While there also exists evidence in the record undermining these facts, the Court must view the record in the light most favorable to the Martins at this juncture.

finally retained an attorney, their counsel wrote State Farm *asking when the company would like to reschedule the examinations*.

These facts distinguish this case from <u>Western National Insurance Co. v. Thompson</u>, 781 N.W.2d 412 (Minn. Ct. App. 2010), <u>rev'd on other grounds</u>, 797 N.W.2d 201 (Minn. 2011), upon which State Farm relies, in which the insureds *flatly refused* to submit to examination. Here, by contrast, the Martins expressed on several occasions that they would sit for examinations. In the Court's view, these facts suffice, at a minimum, to create a jury question whether the Martins "were willing to be examined" as required under their policy. <u>Abraham v. Farmers Home Mut. Ins. Co.</u>, 439 N.W.2d 48, 49 (Minn. Ct. App. 1989) (citation omitted); <u>accord</u> <u>McCullough</u>, 424 N.W.2d at 545 (lawsuit not precluded where insured "has not expressly refused to submit to an examination and has expressed a willingness to be examined shortly after commencing suit").

Moreover, the Minnesota Supreme Court held in <u>Nathe Bros.</u> that an insured's failure to timely submit a proof of loss is not fatal to his claim unless the insurer can "show it was prejudiced" as a result. 615 N.W.2d at 347. State Farm unpersuasively argues that it was prejudiced here, contending that "without [the Martins'] financial records, signed, sworn proof of loss, and submitting to an Examination Under Oath, [it] could not verify the exact circumstances surrounding when, how, and why this loss occurred." (Def. Mem. at 27.) But this bald assertion makes little sense in light of the record before the Court.

First, it is unclear how the Martins' financial records or a sworn proof of loss would contain any information regarding the "when, how, and why" of the fire.  Second, and more importantly, there does not appear to be any dispute that State Farm concluded long ago that the fire was intentionally set.  According to its claim notes, the investigation determined that the fire was of incendiary origin, with a medium petroleum distillate used as an accelerant.  In other words, State Farm appears to already possess the information upon which to deny the Martins' claim – an examination under oath is highly unlikely to change that result.  Indeed, the Court questions why State Farm chose to deny the Martins' claim on procedural grounds at all, rather than for apparent arson.  Notably, State Farm reserved "all rights and defenses" when denying the claim, including "the absence of an accidental loss."  In the Court's view, this strongly suggests that even if the Martins had fully complied with the proof-of-loss and examination-under-oath requirements, State Farm still would have denied their claim.  There is no prejudice evident here.[8]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

---

[8] At oral argument, State Farm's counsel acknowledged that he had not deposed the Martins in this action and would undertake discovery on the "merits" of their claim only if the Court were to deny the instant Motion.  The Court does not believe that such a *de facto* bifurcation of discovery, without Court approval, was appropriate.  The parties should bear in mind that the Court would be disinclined to extend the discovery deadline (September 1, 2011) based on this tactical decision not to seek merits-based discovery earlier in this case.

**ORDERED** that State Farm's Amended Motion for Summary Judgment (Doc. No. 27) is

**DENIED**.[9]

Date:  June 16, 2011                                    s/Richard H. Kyle
                                                       RICHARD H. KYLE
                                                       United States District Judge

---

[9] In its Motion, State Farm alternatively requested that the Court certify to the Minnesota Supreme Court the question "whether insureds are required to satisfy [an] insurance policy's conditions precedent before initiating suit." (Def. Mem. at 28-33.)  In light of the clear case law discussed above, the Court determines that certification is unwarranted.  See, e.g., Johnson v. John Deere Co., 935 F.2d 151, 153 (8th Cir. 1991) (citation omitted) (certification merited only when state law is "genuinely uncertain"); Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, 771 F.2d 1153, 1157 n.2 (8th Cir. 1985) ("Absent a 'close' question and lack of state sources enabling a nonconjectural determination, a federal court should . . . determine all issues before it.").